UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cr-60267-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,
v.

JUSTIN DISPENSA,

    Defendant.
_____/

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Defendant Justin Dispensa's ("Defendant") Motion for Compassionate Release and For Resentencing to Home Confinement, ECF No. [41] ("Motion"), filed on December 23, 2020. The Government filed its Response, ECF No. [45], to which Defendant filed a Reply, ECF No. [46]. The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case and the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

**I.    BACKGROUND**

On November 9, 2017, Defendant was charged in a two-count indictment with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2), and distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), (b)(1). ECF No. [5] ("Indictment"). On February 15, 2018, Defendant pleaded guilty to Count 2 of the Indictment. *See* ECF Nos. [14], [18]. On May 1, 2018, Defendant was sentenced to a term of imprisonment of 75 months, followed by 10 years of supervised release. *See* ECF Nos. [28], [35]. Defendant is currently housed at FCI Coleman Low in Sumterville, Florida.

In the Motion, Defendant requests a reduction in sentence due to the ongoing COVID-19 pandemic, arguing that his underlying medical conditions make him more susceptible to suffering severe consequences of being infected with the virus. The Government opposes the Motion, arguing that compassionate release is not warranted in this case because there are no extraordinary and compelling reasons, and Defendant remains a danger to the community.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with 25,152,433 confirmed cases and 441,831 reported deaths as of February 2, 2021.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated February 2, 2021).

functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II.     LEGAL STANDARD

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority

3

to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief specifically under the compassionate release provision, § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
> . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

As has been recognized by several courts, the Sentencing Commission has not implemented a new policy statement following the First Step Act. *See United States v. Brown*, 411 F. Supp. 3d 446, 449 n.1 (S.D. Iowa 2019) (collecting cases)). Rather, the existing policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons." § 1B1.13, cmt. n.4. As noted by one district judge in *Brown*, "[T]his leaves district courts in a conundrum. On the one hand, Congress unequivocally said it wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with *applicable* policy statements" from the Sentencing Commission. § 3582(c)(1)(A) (emphasis

4

added). On the other hand, the Commission—unable to take any official action—has not made the policy statement for the old regime applicable to the new one." *Id.*

While the Eleventh Circuit has yet to address the issue,[2] four other Circuits have recognized that the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release, and that § 1B1.13 does not apply to cases in which a defendant files a motion for compassionate release. *See United States v. Brooker*, 976 F.3d 228, 234-36 (2d Cir. 2020) ("[T]hough motions by the BOP still remain under the First Step Act, they are no longer exclusive, and we read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *United States v. McCoy*, 981 F.3d 271, 281-82 (4th Cir. 2020) ("By its plain terms, in short, § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."); *United States v. Jones*, 980 F.3d 1098, 1108-09 (6th Cir. 2020) ("[T]he passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release."); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020) ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review.").[3] As such, the Court is not bound by § 1B1.13.

Accordingly,

---

[2] Currently pending before the Eleventh Circuit is a case which raises the question of whether, after the First Step Act, the policy statement in § 1B1.13, comment (n.1), continues to limit a district court's authority in prisoner-filed motions for compassionate release. *See United States v. Bryant*, case no. 19-14267.

[3] *See also United States v. Hampton*, --- F.3d ----, 2021 WL 164831, at *1 (6th Cir. Jan. 19, 2021) ("the § 1B1.13 policy statement, is no longer a requirement courts must address in ruling on defendant-filed motions."); *United States v. Elias*, --- F.3d ----, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021) ("we hold that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions.").

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted"). Through this lens, the Court considers the instant Motion.

### III. DISCUSSION

The Motion requests that Defendant be released because his underlying medical conditions coupled with the coronavirus pandemic make it unsafe for Defendant to remain confined at his institution. Specifically, Defendant cites to abnormal findings on an echo cardiogram test conducted three months prior to his arrest and his history of anxiety and heart palpitations, arguing that it is unknown whether his heart condition has worsened since his incarceration or COVID diagnosis in August 2020. The Government opposes, arguing that Defendant has already recovered

from COVID-19 and fails to present extraordinary and compelling reasons to warrant compassionate release, and that he remains a danger to the community. Upon review and consideration, the Court concludes that Defendant does not present circumstances justifying compassionate release.

Defendant has satisfied the first inquiry in the § 3582 analysis, administrative exhaustion.[4] However, as explained below, he fails to demonstrate that extraordinary and compelling circumstances exist.

CDC guidance indicates that adults of any age with the following health conditions are at increased risk of severe illness due to COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, Down Syndrome, heart conditions, such as heart failure, coronary artery disease, and cardiomyopathies, immunocompromised from solid organ transplant, obesity, severe obesity, pregnancy, sickle cell disease, smoking, and type 2 diabetes.[5] In addition, adults of any age with the following conditions might be at an increased risk for severe illness: asthma (moderate-to-severe), cerebrovascular disease, cystic fibrosis, hypertension or high blood pressure, immunocompromised state from blood or bone marrow transplant, immune deficiencies of HIV, use of corticosteroids, or use of other immune weakening medicines, neurologic conditions such as dementia, liver disease, overweight, pulmonary fibrosis, thalassemia, and type 1 diabetes.[6]

---

[4] The Warden denied Defendant's Request for Compassionate Release/Reduction in Sentence on July 4, 2020. *See* ECF No. [41-1] at 1. In addition, Defendant's request to serve the remainder of his sentence in home confinement was denied on July 23, 2020. *See* ECF No. [41-1] at 2.

[5] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).

[6] *Id.*

Although Defendant asserts that he has a heart condition and has attached a record pre-dating his arrest in this case documenting his abnormal echo cardiogram test result, Defendant denied having any health problems when interviewed for his Presentence Investigation Report. ECF No. [27] ¶ 68. In addition, Defendant's medical records indicate that he specifically denied any cardiovascular issues in his BOP health screen. *See* ECF No. [43-2] at 9. Although Defendant tested positive for COVID-19 on August 20, 2020, the records indicate that Defendant denied any symptoms at each health services follow-up since his positive test result. ECF No. [43-3] at 1-10. Further, Defendant is 33 years old, and his medical records do not reflect that his treatments while incarcerated are inadequate to care for his medical needs, and he otherwise fails to provide any evidence or argument that his health is deteriorating, much less from COVID-19. Specifically, the representations in the Motion regarding the severity of his heart condition and that he continues to exhibit numerous symptoms associated with being COVID-19 positive are simply not supported by the medical records provided. *See, e.g.* ECF No. [43-3] at 11. Moreover, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . .")). Thus, Defendant has not met his burden to demonstrate that extraordinary and compelling reasons exist to support his request for compassionate release or sentence modification.[7]

---

[7] Because Defendant's Motion fails to establish any extraordinary and compelling circumstances warranting his release to home confinement, the Court does not address the § 3553(a) factors, or whether Defendant poses a danger to the safety of others or to the community under to § 3142(g).

8

Case No. 17-cr-60267-BLOOM

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [41]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 2, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record